IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DWAYNE DEMONT HAIZLIP,       )
                             )
            Petitioner,      )
                             )
      v.                     )      1:18CV187
                             )
JOSEPH VALLIERE,             )
                             )
            Respondent.      )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus via 28 U.S.C. § 2254. (Docket Entry 1.) For the reasons that follow, this Court should deny relief.

## I. Background

After a jury found Petitioner guilty of trafficking in 200 grams or more, but less than 400 grams, of cocaine by possession and by transportation in cases 11CRS87052 and 12CRS24119, Petitioner pleaded guilty to attaining habitual felon status in case 11CRS24787, and the Superior Court of Guilford County entered a consolidated judgment imposing a term of 127 to 162 months in prison. (Id., ¶¶ 1, 3-6; see also Docket Entry 6-3 at 26-35.)[1] The North Carolina Court of Appeals affirmed. State v. Haizlip, No. COA12-1289, 228 N.C. App. 140 (table), 746 S.E.2d 21 (table), 2013 WL 3049129 (Jun. 18, 2013) (unpublished). Thereafter, Petitioner neither sought review in the North Carolina Supreme

---

[1] Throughout this Recommendation, pin citations to page numbers refer to the page numbers in the footer appended to those materials at the time of their docketing in the CM/ECF system.

Court (Docket Entry 1, ¶ 9(g)), nor filed a petition for certiorari in the United States Supreme Court (id., ¶ 9(h)).

Approximately four years after the Court of Appeals denied Petitioner's direct appeal, Petitioner filed a pro se motion for appropriate relief ("MAR") in the trial court (Docket Entries 6-7, 6-8; see also Docket Entry 1, ¶¶ 10, 11(a)(1)-(6)), which that court denied (Docket Entry 6-9; see also Docket Entry 1, ¶ 11(a)(7), (8).) Petitioner then filed a pro se certiorari petition with the Court of Appeals seeking review of his MAR's denial (Docket Entries 6-10, 6-11; see also Docket Entry 1, ¶ 11(b)(1)-(6)), which that court summarily denied (Docket Entry 6-12; see also Docket Entry 1, ¶ 11(b)(7), (8)).

Petitioner subsequently instituted this action by filing a form Petition under 28 U.S.C. § 2254. (Docket Entry 1.) Respondent has moved for summary judgment. (Docket Entry 5; see also Docket Entry 6 (Respondent's summary judgment brief).) Petitioner has responded. (Docket Entry 8 (stating, in document entitled "Response to Respondent's Motion for Summary Judgment," that Petitioner "agrees that there are no genuine issues of material fact," but contends, for reasons "shown in the accompanying Supporting Brief, . . . that the Motion for Summary Judgment filed by [] Respondent should be denied and [s]ummary [j]udgment be entered in favor of [] Petitioner"); see also Docket Entry 9 (Supporting Brief of Petitioner).)

## II. Facts

On direct appeal, the North Carolina Court of Appeals summarized the trial evidence as follows:

> On 7 September 2011, Greensboro police conducted surveillance of a house to investigate a complaint of drug activity. [Petitioner] and several others attempted to flee in a vehicle parked outside of the house. The officers pursued the vehicle. When the car finally stopped, [Petitioner] continued to flee on foot. The officers eventually located and arrested [Petitioner]. After detaining [Petitioner], the officers called in a K-9 unit to search his flight path. A bag containing five smaller plastic bags filled with white powder was found along [Petitioner's] flight path. The officers submitted the white powder and the bags to the State Bureau of Investigation (SBI), and an SBI agent testified that the white powder was 248.2 grams of cocaine.

Haizlip, 2013 WL 3049129, at *1.

## III. Grounds for Relief

The Petition raises three grounds for relief:

(1) "The enactment of the mandatory Drug Trafficking sentence is protected by [a] 'Liberty Interest[]' emanating from the Due Process of Law Clause of the 14th Amendment" (Docket Entry 1, ¶ 12 (Ground One)) and, "[p]ursuant to N.C. Gen. Stat. [§] 90-95(h)(3)b., Trafficking in 200-400 grams of cocaine requires a mandatory sentence of 70-84 months, in spite of any other provision of law except substantial assistance[ but t]he state increased [] Petitioner's mandatory sentence to 127-162 months by using the Habitual Felon Act" (id., ¶ 12(Ground One)(a));

(2) "The use of the Habitual Felon Act to enhance the mandatory Punishment for Petitioner[']s Drug Trafficking sentence violates the Petitioner[']s Fair Notice rights, emanating from the

Due Process Clause of the 14th Amendment" (id., ¶ 12 (Ground Two)); and

(3) "Petitioner[']s [t]rial and [a]ppellate attorney[]s both rendered him an ineffectiveness [sic] assistance of counsel by not asserting the mandatory sentence for [Petitioner's] Drug Trafficking is protected by Liberty Interest[ a]nd [] Petitioner was not put on Fair Notice by the [North Carolina] legislature, in that the Habitual Felon Act could be used under Chapter 90 Article 5 as an exception to enhance the mandatory Drug Trafficking sentence" (id., ¶ 12 (Ground Three)(a)).

## **IV. Habeas Standards**

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, "[b]efore [the C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. . . . The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). In addition, this Court must apply a highly deferential standard of review in connection with any habeas claim "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief on any such habeas claim unless the underlying state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by

the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id.; see also 28 U.S.C. § 2254(e)(1) (establishing, in federal habeas proceedings, presumption of correctness as to state court factual findings, subject to rebuttal only by "clear and convincing evidence").

To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confront[] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[] at a result opposite" to the United States Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of United States Supreme Court case law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409-11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous"); see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (holding that Section 2254(d) imposes "a difficult to meet and highly deferential standard . . ., which demands that state-court decisions be given the benefit of the doubt" and that a "petitioner carries the burden of proof" (internal citations and quotation marks omitted)).

## V. Discussion

**A. Grounds One and Two[2]**

Via Grounds One and Two, Petitioner contends that the trial court's application of the Habitual Felon Act, N.C. Gen. Stat. §§ 14-7.1, et seq.,[3] to increase Petitioner's mandatory drug trafficking sentence under N.C. Gen. Stat. § 90-95(h)(3)b. from 70 to 84 months to 127 to 162 months in prison violated both a "'Liberty Interest[]'" (Docket Entry 1, ¶ 12 (Ground One)), and his "Fair Notice rights, emanating from the Due Process Clause of the 14th Amendment" (id., ¶ 12 (Ground Two)). In support of those arguments, Petitioner relies primarily on the language of Section

---

[2] Because Grounds One and Two of the instant Petition both challenge the constitutionality of trial court's habitual felon enhancement of Petitioner's mandatory drug trafficking sentence, this Recommendation will address them together. Of note, Petitioner raised the substance of Grounds One and Two in a direct appeal of other drug-related convictions, and the North Carolina Court of Appeals denied that appeal on the merits, this Court denied Petitioner's subsequent Section 2254 Petition on the merits, the United States Court of Appeals for the Fourth Circuit dismissed his appeal, and the United States Supreme Court denied certiorari. See State v. Haizlip, No. COA13-1286, 235 N.C. App. 425 (table), 763 S.E.2d 927 (table), 2014 WL 3824248, at *6-7 (Aug. 5, 2014) (unpublished), review denied, 367 N.C. 796, 766 S.E.2d 660 (2014); Haizlip v. Poole, No. 1:15CV417, 2016 WL 225664, at *2-7 (M.D.N.C. Jan. 19, 2016) (unpublished), recommendation adopted, slip op. (M.D.N.C. Mar. 25, 2016) (Schroeder, J.), appeal dismissed, 669 F. App'x 673 (4th Cir. 2016), cert. denied, ___ U.S. ___, 137 S. Ct. 1824, 2017 WL 915419 (Apr. 24, 2017). As Respondent argues, although in the "above cited cases, Petitioner characterized his claims as a violation of the 'rule against leni[t]y,' they are still the same basic underlying claims, i.e., [that] due process prohibits the enhancement of his mandatory drug trafficking sentences by the habitual felon law." (Docket Entry 6 at 3.)

[3] In North Carolina, an "habitual felon" means "[a]ny person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof." N.C. Gen. Stat. § 14-7.1. "[W]hen one who has already attained the status of an habitual felon is indicted for the commission of another felony, that person may then be also indicted in a separate bill as being an habitual felon." State v. Allen, 292 N.C. 431, 433, 233 S.E.2d 585, 587 (1977). "Being an habitual felon is not a crime but is a status the attaining of which subjects a person thereafter convicted of a crime to an increased punishment for that crime." Id. at 435, 233 S.E.2d at 588.

90-95(h), which he contends reflects the state's "mandatory directive" (Docket Entry 9 at 3) regarding the maximum sentence allowed for trafficking in 200 to 400 grams of cocaine (id. at 2-3).[4] According to Petitioner, the MAR court (and/or the North Carolina Court of Appeals), in denying the parallel claims in his MAR, "blatant[ly] disregard[ed]" precedent from the United States Court of Appeals for the Fourth Circuit in Prieto v. Clark, 780 F.3d 245, 248 (4th Cir. 2015) (noting that, "[i]n the late 70s and early 80s, the [United States Supreme] Court broadly defined state-created interests, holding that any mandatory state directive created a state law liberty interest triggering procedural Due Process protections" (in turn citing Hewitt v. Helms, 459 U.S. 460 (1983), Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1 (1979))). (Docket Entry 9 at 5.)

Petitioner further asserts that the introductory language of Section 90-95(h), "[n]otwithstanding any other provision of law, the following provisions apply except as otherwise provided in [Article 5, the North Carolina Controlled Substances Act,]" bolsters his position, because "[t]he [North Carolina] Legislature did not include the habitual felon sentence . . . as an exception

---

[4] Section 90-95(h) provides as follows:

Any person who . . . transports[] or possesses 28 grams or more of cocaine . . . shall be guilty of a felony . . . known as "trafficking in cocaine" and if the quantity of such substance or mixture involved . . . [i]s 200 grams or more, but less than 400 grams, such person shall be punished as a Class F felon and shall be sentenced to a minimum term of 70 months and a maximum term of 84 months in . . . prison.

N.C. Gen. Stat. § 90-95(h) (2011) (emphasis added).

-7-

that gives the state sentencing court the authority to impose a habitual felon sentence despite the mandatory term of 70 to 84 months for 200 to 400 grams of cocaine." (Id. at 3 (quoting N.C. Gen. Stat. § 90-95(h) (2011) (emphasis added)); see also id. at 4 (noting that "the habitual felon statutes do not apply because [they are] not provided in Article 5 Chapter 90" but rather in "Article 2A Chapter 14 in the general laws of [North Carolina]" (internal quotation marks omitted)).) Thus, Petitioner argues that Section 90-95(h) "does not put [] Petitioner . . . on Fair Notice [] that the [H]abitual [F]elon [A]ct can be used as an exception to enhance his mandatory Drug Trafficking sentence." (Id. at 10; see also id. at 10-13 (citing United States v. Batchelder, 442 U.S. 114, 123 (1979), Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 13 (1978), Wolff v. McDonnell, 418 U.S. 539, 563-64 (1974), Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973), Morrissey v. Brewer, 408 U.S. 471, 486-87, 489 (1972), and Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314 (1950))).)

Petitioner also faults the MAR court (and/or the Court of Appeals) for relying on State v. Eaton, 210 N.C. App. 142, 707 S.E.2d 642, review denied, 365 N.C. 202, 710 S.E.2d 25 (2011), in denying the parallel claims in his MAR, because "[t]he Eaton court cite[d] no authority for [its holding], arbitrarily affirming in its discreation [sic] an habitual felon sentence, despite the mandatory state directive prescribed by the [North Carolina] Legislature" (Docket Entry 9 at 5-6), and "contradict[ed] the declarations in" three prior Court of Appeals decisions (id. at 6-

7). Petitioner further maintains that the North Carolina Court of Appeals's opinion in Eaton "was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the [United States]." (Id. at 8 (citing Prieto, Hewitt, Greenholtz, Hicks, Fetterly v. Paskett, 997 F.2d 1295, 1300 (9th Cir. 1993), Lambright v. Steward, 167 F.3d 447, 482 (9th Cir. 1999), Ballard v. Estelle, 937 F.2d 453, 456 (9th Cir. 1991)).) Petitioner's arguments fall short.

In moving for summary judgment, Respondent argues that the MAR court correctly "adjudicat[ed] and deni[ed] [Petitioner's instant claims] on the merits." (Docket Entry 6 at 5 (citing Docket Entry 6-9).) Thus, Respondent contends that this Court should deny relief "under the highly deferential standards of review, contained in 28 U.S.C. § 2254(d) and (e)." (Id. at 6.) Petitioner's response in opposition does not specifically contest the applicability of Section 2254(d) and (e) (see Docket Entry 9), but he does fault the MAR court (and/or the Court of Appeals) for "not address[ing] the Fair Notice argument" in his MAR (id. at 11). However, the lack of express discussion of Petitioner's fair notice argument by those courts does not render Section 2254(d) and (e) inapplicable, because, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[, and] . . . [that] presumption is a strong one that may be rebutted only in unusual circumstances." Johnson v. Williams, 568 U.S. 289, 301 (2013); see also Harrington v. Richter, 562 U.S. 86,

99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Petitioner has not rebutted that presumption. (See Docket Entries 1, 8, 9.)

Further, Petitioner has misconstrued the habeas standard of review set forth in Section 2254(d) by contending that the North Carolina Court of Appeals's opinion in Eaton "was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the [United States]." (Docket Entry 9 at 8.) Under Section 2254(d), this Court must evaluate whether the state court(s) that adjudicated the merits of Petitioner's underlying habeas claims contradicted or unreasonably applied clearly established Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Thus, the Court must examine the MAR court's decision denying Petitioner's parallel habeas claims (and/or the Court of Appeals' order denying Petitioner's certiorari petition seeking review of his MAR's denial) to determine whether those courts contravened or unreasonably applied clearly established federal law.

Additionally, to the extent Petitioner contends that the MAR court (and/or the Court of Appeals) erred by relying on Eaton, because "[t]he Eaton court cite[d] no authority for [its holding]" (id. at 5-6) and/or "contradict[ed] the declarations in" three prior Court of Appeals decisions (id. at 6-7), such a contention

-10-

"rests solely upon an interpretation of [state] case law and statutes, [and] it is simply not cognizable on federal habeas review." Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998). Indeed, the MAR court relied on Eaton (and the Court of Appeals' 2014 Haizlip decision denying Petitioner's direct appeal of other drug trafficking offenses) in rejecting Petitioner's argument "that drug trafficking offen[der]s are not subject to enhanced sentencing as habitual felons pursuant to N.C.[ Gen. Stat.] section 14-7.6 because of the sentencing language set forth in N.C.[ Gen. Stat.] section 90-95(h)." (Docket Entry 6-9 at 2.)

In Eaton, which also concerned "a defendant convicted of drug trafficking and subject to enhanced sentencing as an habitual felon," the Court of Appeals concluded that North Carolina's drug trafficking statute and its habitual felon statute "complement each other and address different means of enhancing punishment," and deemed reasonable the assumption that the North Carolina legislature "meant to further enhance drug traffickers who are also habitual felons." Eaton, 210 N.C. App. at 151, 707 S.E.2d at 649.[5] More specifically, the Court of Appeals held that, "under the interpretation of the relevant statutory provisions that [it] believe[d] to be appropriate, a drug trafficker who is not an habitual felon would be subject to enhanced sentencing pursuant to N.C. Gen. Stat. § 90-95(h)(4), while a drug trafficker who has also

---

[5] The drug trafficking offense in Eaton involved an opiate, see Eaton, 210 N.C. App. at 144, 707 S.E.2d at 644, a class of drug covered by Paragraph (4) of North Carolina's drug trafficking statute, see N.C. Gen. Stat. § 90-95(h)(4). As documented in Section I, Petitioner's drug trafficking offenses involved cocaine, such that Paragraph (3) of North Carolina's drug trafficking statute attached, see N.C. Gen. Stat. § 90-95(h)(3).

attained habitual felon status would be subject to even more enhanced sentencing pursuant to N.C. Gen. Stat. § 14-7.6." Eaton, 210 N.C. App. at 151-52, 707 S.E.2d at 649; see also Haizlip, 2014 WL 3824248, at *6 ("disagree[ing]" with Petitioner's "conten[tion] that N.C. Gen. Stat. § 90-95(h)(3), which criminalizes the trafficking of cocaine, includes a mandatory sentence that may not be enhanced" (citing and quoting Eaton, 210 N.C. App. at 144, 149-52, 707 S.E.2d at 644, 647-49)).[6] The MAR court's (and/or the Court of Appeals's) reliance on Eaton's (and Haizlip's) holding that two North Carolina statutes complement, rather than conflict with, each other must stand, because it "is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).[7]

---

[6] North Carolina's Structured Sentencing Act "creates felony sentences strictly contingent on two factors: the designated 'class of offense' and the offender's 'prior record level.'" United States v. Simmons, 649 F.3d 237, 240 (4th Cir. 2011) (en banc) (quoting N.C. Gen. Stat. § 15A-1340.13(b)). In North Carolina, drug crimes generally are "subject to Structured Sentencing. See N.C. Gen. Stat. §§ 15A-1340.10 to 15A-1340.33 (2007); N.C. Gen. Stat. § 90-95(a)(1) (2007). . . . [However, a separate] legislatively prescribed mandatory minimum sentence [applies to] the controlled substance trafficking offenses contained in N.C. Gen. Stat. § 90-95(h)(1)-(4b)." State v. Austin, No. COA08-1382, 197 N.C. App. 402 (table), 677 S.E.2d 13 (table), 2009 WL 1525256, at *2 (June 2, 2009) (unpublished), review denied, 363 N.C. 583, 682 S.E.2d 391 (2009). In that sense, North Carolina's drug trafficking statute imposes an "enhanced" sentence. Conversely, "[t]he Habitual Felon Act elevates the convicted person's status within Structured Sentencing so that the person is eligible for longer minimum and maximum sentences." State v. Parks, 146 N.C. App. 568, 572, 553 S.E.2d 695, 698 (2001), review denied, 355 N.C. 220, 560 S.E.2d 355 (2002).

[7] The MAR court (and/or the Court of Appeals) did not act unreasonably by adhering to the Court of Appeals's previously espoused view that, rather than conflicting (because both contain "mandatory" language), North Carolina's drug trafficking statute and its habitual felon statute "complement each other," Eaton, 210 N.C. App. at 151, 707 S.E.2d at 649. To the contrary, as the Court of Appeals pointed out, "as a matter of public policy, it is reasonable to assume that the legislature intended to further enhance the sentences of drug traffickers who are also habitual felons rather than ignoring their habitual
(continued...)

In a similar vein, Petitioner misses the mark by arguing that the MAR court (and/or the Court of Appeals), in denying the parallel claims in his MAR, "blatant[ly] disregard[ed]" precedent from the Fourth Circuit in Prieto. (Docket Entry 9 at 5.) As discussed above, Petitioner bears the burden to show the existence of clearly established United States Supreme Court precedent on point. See 28 U.S.C. § 2254(d).[8] Moreover, although the language from Prieto upon which Petitioner relies, i.e., "[i]n the late 70s and early 80s, the [United States Supreme] Court broadly defined state-created interests, holding that any mandatory state directive created a state law liberty interest triggering procedural Due Process protections," in turn relies on two United States Supreme Court decisions (Docket Entry 9 at 5 (quoting Prieto, 780 F.3d at 248 (in turn citing Hewitt and Greenholtz))), those cases (and Prieto) address the circumstances under which state laws governing prison administration create liberty interests under the Due Process Clause for inmates challenging the conditions of their confinement, see Hewitt, 459 U.S. at 466-72; Greenholtz, 442 U.S.

---

[7](...continued)
felon status for sentencing purposes." Id. at 152, 707 S.E.2d at 649; see also Parke v. Raley, 506 U.S. 20, 26-27 (1992) ("Statutes that punish recidivists more than first offenders have a long tradition in this country that dates back to colonial times. . . . States have a valid interest in deterring and segregating habitual criminals."). Nor, as the Court of Appeals indicated, does common sense favor construing North Carolina's sentencing laws to subject lower-level drug offenders (i.e., those not involved with trafficking-level amounts of drugs) to enhanced sentencing as habitual felons, but to immunize higher-level drug traffickers (i.e., those involved with larger amounts of drugs) from such enhancement when they qualify as habitual felons. See Eaton, 210 N.C. App. at 152, 707 S.E.2d at 649.

[8] For the same reason, Petitioner's citations to Fetterly, Lambright, and Ballard, three cases from the United States Court of Appeals for the Ninth Circuit, fail to meet his burden under Section 2254(d). (See Docket Entry 9 at 6, 8.)

-13-

at 11-12; Prieto, 780 F.3d at 248-55. Furthermore, Petitioner ignored significant language after his quoted excerpt in Prieto wherein the Fourth Circuit observed that, "[i]n an effort to eliminate the resultant '[p]arsing' of state statutes to find rights by 'negative implication,' the [United States Supreme] Court corrected course in Sandin v. Conner, 515 U.S. 472, 481-81 [] (1995)[, and] added a second requirement for establishing a liberty interest warranting constitutionally adequate protection" and, "[a] decade later, in Wilkinson v. Austin, 545 U.S. 209 [] (2005), . . . noted that the 'touchstone of th[is] inquiry . . . is not the language of the regulations regarding th[e] conditions [of confinement],' but whether their application imposed 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Prieto, 780 F.3d at 249 (emphasis added). Thus, Hewitt, Greenholtz, and Prieto do not constitute clearly established federal law that would govern this Court's review of Petitioner's collateral challenge under Section 2254(d).

Petitioner's citation to Batchelder in support of his fair notice argument fares no better. (See Docket Entry 9 at 10, 13.)[9]

---

[9] The other cases Petitioner cites to bolster his fair notice contentions (see Docket Entry 9 at 10-13) do not constitute clearly established federal constitutional commands regarding state court sentencing practices and thus lack applicability to Section 2254(d), see Memphis Light, Gas & Water Div., 436 U.S. at 14 (holding utility company's notification procedure not "reasonably calculated" to inform customers of opportunity to contest their bills); Wolff, 418 U.S. at 564 (setting forth due process requirements for inmates accused of disciplinary infractions); Gagnon, 411 U.S. at 782 (deeming probationer "entitled to a preliminary and a final revocation hearing, under the conditions specified in Morrissey"); Morrissey, 408 U.S. at 488-89 (deciding minimum requirements of due process for parolees subject to revocation); Mullane, 339 U.S. at 320 (ruling that "notice [by publication] of judicial settlement of accounts . . . [wa]s incompatible with the requirements of the Fourteenth Amendment as a basis for adjudication depriving known persons whose whereabouts are also known of
(continued...)

In <u>Batchelder</u>, the United States Supreme Court ruled that two overlapping criminal statutes did <u>not</u> violate the fair notice requirements of the Due Process Clause:

> It is a fundamental tenet of due process that no one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. A criminal statute is therefore invalid if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. So too, <u>vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute</u>.
>
> The provisions in issue here, however, unambiguously specify the activity proscribed and the penalties available upon conviction. That this particular conduct may violate both [t]itles does not detract from the notice afforded by each. . . . <u>So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied</u>.

<u>Batchelder</u>, 442 U.S. at 123 (emphasis added and internal citations, quotation marks, and brackets omitted).

Here, the applicable statutes provide notice of the potential sentences at issue with the "sufficient clarity" that <u>Batchelder</u> requires. <u>Id.</u> The Habitual Felon Act unambiguously provides:

> When an habitual felon . . . commits any felony under the laws of the State of North Carolina, the felon <u>must</u>, upon . . . plea of guilty[,] . . . be sentenced at a <u>felony class level that is four classes higher than the principal felony for which the person was convicted; but under no circumstances shall an habitual felon be sentenced at a level higher than a Class C felony</u>.

---

[9](...continued)
substantial property rights").

N.C. Gen. Stat. § 14-7.6 (emphasis added).[10]  As Petitioner's drug trafficking offenses constitute Class F felonies, see N.C. Gen. Stat. § 90-95(h) (2011), attainment of habitual felon status would subject Petitioner to sentencing as a Class C felon, see N.C. Gen. Stat. § 14-7.6 (2009).

Coordinately, North Carolina's Structured Sentencing Act unambiguously provides, for a Class C felony with Petitioner's prior record level of V (the calculation of which the Structured Sentencing Act explains, see N.C. Gen. Stat. § 15A-1340.14 (2009), and the attainment of which Petitioner did not contest (see Docket Entry 6-3 at 32-33)), a mitigated range of 76 to 131 months, a presumptive range of 101 to 162 months, and an aggravated range of 127 to 200 months in prison for each drug trafficking conviction. See N.C. Gen. Stat. § 15A-1340.17(c), (e) (2009).[11]  Given the clarity of these sentencing provisions, and notwithstanding the

---

[10] On February 6, 2012, a grand jury issued a superseding indictment finding probable cause that Petitioner qualified as an habitual felon under N.C. Gen. Stat. § 17-7.1, putting Petitioner on notice of the applicability of the enhanced sentencing provisions of the Habitual Felon Act. (See Docket Entry 6-3 at 11.)  After the jury found Petitioner guilty of both drug trafficking offenses, Petitioner, proceeding with counsel, pleaded guilty to attaining habitual felon status subject to sentencing as a Class C felon (see id. at 29), and therein agreed that the trial court would "impose any terms deemed appropriate[] for habitual felon status offense" (id. at 30 (emphasis added)). Petitioner swore that he "enter[ed] []his plea of [his] own free will, fully understanding of what [he was] doing," and that he did not "have any questions about what ha[d] just been said to [him] or about anything else connected to [his] case." (Id.)

[11] In accordance with those sentencing provisions, the trial court consolidated Petitioner's convictions into one judgment and sentenced Petitioner to 127 to 162 months' imprisonment (see Docket Entry 6-3 at 32-35), which remained in the presumptive range for a Class C felon with a prior record level of V, see N.C. Gen. Stat. § 15A-1340.17(c) (listing 101 to 127 months as presumptive minimum sentence range for Class C felon with prior record level V), (e) (showing 162 months as maximum sentence for minimum sentence of 127 months) (2009)).

language of Section 90-95(h), Petitioner could have had <u>no</u> reasonable expectation of a 70 to 84 month prison sentence. Accordingly, Petitioner has not shown that the MAR court (and/or Court of Appeals) contradicted or unreasonably applied <u>Batchelder</u> by denying his parallel fair notice claim.

In sum, Grounds One and Two fail to demonstrate Petitioner's entitlement to habeas relief, because he has not shown that the MAR court (and/or the Court of Appeals) unreasonably applied clearly established federal law. <u>See generally</u> <u>White v. Wheeler</u>, ___ U.S. ___, ___, 136 S. Ct. 456, 460 (2015) ("Under § 2254(d)(1), a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (internal quotation marks omitted)); <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007) ("The question under [Section 2254(d)] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold.").

**B. Ground Three**

Lastly, Petitioner contends that his "[t]rial and [a]ppellate attorney[]s both rendered him an ineffectiveness [sic] assistance of counsel by not asserting the mandatory sentence for [Petitioner's] Drug Trafficking is protected by Liberty Interest[a]nd [] Petitioner was not put on Fair Notice by the [North Carolina] legislature, in that the Habitual Felon Act could be used

-17-

under Chapter 90 Article 5 as an exception to enhance the mandatory Drug Trafficking sentence." (Docket Entry 1, ¶ 12 (Ground Three)(a).) Petitioner raised the substance of Ground Three in his MAR (and supporting Affidavit) (see Docket Entry 6-7 at 6, 27-36), and the MAR court denied that claim on the merits (see Docket Entry 6-9 at 3-4). Thus, Section 2254(d)'s highly deferential standard governs this Court's review of Petitioner's instant parallel claim.

"In order to establish an ineffective assistance of counsel claim . . ., [a petitioner must] establish that his 'counsel's representation fell below an objective standard of reasonableness,' measured by the 'prevailing professional norms,' [Strickland v. Washington, 466 U.S. 668, 688 (1984)], and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' id. at 694." Fisher v. Lee, 215 F.3d 438, 446–47 (4th Cir. 2000) (internal parallel citations omitted). Further, "[w]here the issue is whether the state court has unreasonably applied Strickland standards to a claim of ineffective assistance of counsel, . . . double deference is required." Lavandera–Hernandez v. Terrell, No. 1:12CV553, 2013 WL 1314721, at *4 (M.D.N.C. Mar.28, 2013) (Schroeder, J.) (unpublished) (internal quotation marks omitted); see also Harrington, 562 U.S. at 105 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (internal citations and quotation marks omitted)).

For the reasons discussed above, Grounds One and Two lack merit. As such, Petitioner's trial and appellate counsel could not have performed deficiently by failing to raise such meritless claims. See Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel was not constitutionally ineffective in failing to object . . . [when] it would have been futile for counsel to have done so . . . ."); Ellison v. United States, Nos. 3:07CR30RJC, 3:10CV207RJC, 2013 WL 2480654, at *3 (W.D.N.C. June 10, 2013) (unpublished) ("[A]ny arguments made by counsel along the lines suggested by [the p]etitioner would have been futile. Therefore, [the p]etitioner has failed to establish a prima facie claim of ineffective assistance of counsel."); Walker v. United States, Civ. No. WDQ-10-2739, Crim. No. WDQ-07-0146, 2011 WL 4103032, at *3 (D. Md. Sept. 9, 2011) (unpublished) (ruling that where argument "would have been futile [a defendant's] appellate counsel was not ineffective for failing to raise it").

Simply put, Ground Three affords no basis for habeas relief.

## VI. Conclusion

Petitioner's federal habeas claims fail as a matter of law under Section 2254(d).[12]

---

[12] Respondent alternatively has argued that Grounds One and Two lack merit even under regular de novo review and qualify as non-cognizable (see Docket Entry 6 at 3-4, 7-8), as well as that the so-called Teague bar and the doctrine of procedural default foreclose habeas relief (see id. at 4-6, 7). With regard to Ground Three, Respondent contends in the alternative that Ground Three fails under de novo review, and that a Teague bar applies. (Id. at 8.) Because the Petition clearly falls short under Section 2254(d) (the applicability of which Petitioner has not expressly contested), the Court need not address Respondent's alternative arguments.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 5) be granted and that judgment be entered against Petitioner in this action without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 14, 2019